IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ILLUMINA, INC., Plaintiff, | ) | |
| v. | ) | C.A. No. 26-531 (JLH) |
| BILLIONTOONE, INC., Defendant. | ) | |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS**
**MOTION TO TRANSFER**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morrisnichols.com

*Attorneys for Defendant BillionToOne, Inc.*

OF COUNSEL:

Alan J. Heinrich
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

August 7, 2026

# TABLE OF CONTENTS


| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | SUMMARY OF ARGUMENT | | 2 |
| III. | STATEMENT OF FACTS | | 2 |
| | A. | The Parties Both Have Their Principal Operations In California, And Nearly All Key Party And Non-Party Witnesses Reside In Northern California. | 2 |
| | B. | The Activities Giving Rise to This Complaint Have Strong Ties To Northern California But Have No Distinct Ties to Delaware. | 5 |
| | C. | Illumina Has Previously Filed Multiple Lawsuits on Similar Subject Matter in the Northern District of California. | 5 |
| IV. | ARGUMENT | | 6 |
| | A. | Legal Standards | 6 |
| | B. | The Case Could Have Been Brought In The Northern District. | 8 |
| | C. | The Private Interest Factors Strongly Favor Transfer. | 8 |
| | | 1. Illumina's choice of forum should be given little weight. | 8 |
| | | 2. The Defendant's choice of forum is more convenient for everyone. | 9 |
| | | 3. The claims primarily arose in California, not Delaware. | 9 |
| | | 4. California is far more convenient for both parties. | 10 |
| | | 5. The Northern District is more convenient for key witnesses. | 12 |
| | | 6. The relevant evidence is located in California. | 15 |
| | D. | The Public Interest Factors Also Strongly Favor Transfer | 16 |
| | | 1. Practical considerations favor transfer. | 17 |
| | | 2. The local interest factor favors transfer. | 17 |
| V. | CONCLUSION | | 17 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 3M Co.*,
No. 20-2864, 2020 WL 13924735 (3d Cir. Nov. 18, 2020) ....................................................15

*Affymetrix, Inc. v. Synteni, Inc.*,
28 F. Supp. 2d 192 (D. Del. 1998)....................................................................12, 13, 15

*Blackbird Tech LLC v. Cloudflare, Inc.*,
No. CV 17-283, 2017 WL 4543783 (D. Del. Oct. 11, 2017) ...............................12, 13, 14, 16

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)......................................................................11, 14, 15,

*Illumina, Inc. v. BGI Genomics Co.*,
No. 19-CV-03770-WHO, 2022 WL 899421 (N.D. Cal. Mar. 27, 2022)..................................6

*Illumina, Inc. v. Complete Genomics, Inc.*,
No. CIV.A. 10-649, 2010 WL 4818083 (D. Del. Nov. 9, 2010) .................................... *passim*

*Illumina, Inc. v. Natera, Inc.*,
No. 18-CV-01662-SI, 2019 WL 377743 (N.D. Cal. Jan. 30, 2019).........................................5

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995).........................................................................................6, 8

*LG Electronics, Inc. v. First Int'l Computer, Inc.*,
138 F. Supp. 2d 574 (D.N.J. 2001) ..........................................................................9, 10

*Mekiki Co. v. Facebook, Inc.*,
No. CIV.A.09-745 (JAP), 2010 WL 2348740 (D. Del. June 7, 2010) .................................7, 8

*MoneyCat Ltd v. PayPal Inc.*,
No. CV 1:13-1358, 2014 WL 2042699 (D. Del. May 15, 2014).......................................11, 16

*Pacira Biosciences, Inc. v. Ventis Pharma, Inc.*,
No. CV 23-1250-RGA, 2024 WL 3925117 (D. Del. Aug. 23, 2024).................................8, 10

*Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*,
126 F. Supp. 3d 430 (D. Del. 2015)...........................................................................9, 10, 17

*Rebak v. United Airlines, Inc.*,
No. CV 23-537-JLH, 2025 WL 388704 (D. Del. Feb. 4, 2025) ............................................15

*Samsara Inc. v. Motive Techs., Inc.*,
No. CV 24-84 (MN), 2024 WL 3822981 (D. Del. Aug. 14, 2024) ....................................11, 16

*Signal Tech, LLC v. Analog Devices, Inc.*,
No. CIV.A. 11-1073-RGA, 2012 WL 1134723 (D. Del. Apr. 3, 2012) ..............................8, 14

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988)..........................................................................................................6

*Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*,
676 F. Supp. 2d 321 (D. Del. 2009)...........................................................................7, 13

*Valnet Inc. v. Wrap News Inc.*,
No. CV 25-507-JLH, 2025 WL 3770176 (D. Del. Dec. 31, 2025)............................................6

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
329 F. Supp. 3d 1070 (N.D. Cal. 2018) .........................................................................5

*Wenzhou Xin Xin Sanitary Ware Co. v. Delta Faucet Co.*,
No. CV 23-2038-ES-AME, 2023 WL 6158942 (D.N.J. Sept. 21, 2023) ................................13

**Statutes**

28 U.S.C. § 1404(a) ..........................................................................................1, 2, 6, 7

## I. INTRODUCTION

Defendant BillionToOne, Inc. ("BillionToOne") respectfully requests that the Court transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a). On May 7, 2026, Illumina, Inc. ("Illumina") sued BillionToOne in the District of Delaware for patent infringement. Months later, substantive litigation has yet to begin, with only six entries on the docket, five of which were filed on the same initial May 7 date. BillionToOne was served on August 3, 2026, four days prior to BillionToOne filing the present transfer motion.

Both Illumina and BillionToOne are headquartered in California. The named inventors on the patents—key witnesses not employed by either party—all maintain homes in California outside the subpoena power of this Court but within the subpoena power of the Northern District of California. The accused products were designed, developed and commercialized in California by California-based scientists. Nearly all relevant documents and evidence are located in California. California, not Delaware, is the center of gravity of this case.

In contrast to these overwhelming California connections, the only link between this action and Delaware is that it is the state of incorporation of the parties. But neither Illumina nor BillionToOne maintain an office in Delaware. No relevant witness resides in Delaware. Should the case move forward in Delaware, all party witnesses would have to travel nearly 3,000 miles across the country to attend trial, while testimony from key third party witnesses would be limited to deposition designations instead of live trial testimony. These facts put this case in the bullseye for transfer under 28 U.S.C. § 1404(a). BillionToOne accordingly requests that this case be transferred to the Northern District of California, where the case may be more conveniently litigated for the parties and witnesses.

## II. SUMMARY OF ARGUMENT

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. 1404(a). This case could have been brought in the Northern District of California, where BillionToOne is headquartered. The balance of private and public factors strongly favor transfer to the Northern District of California, where the accused products were developed, where the evidence is primarily located, and where the inventors of the asserted patents reside. The Northern District has significantly stronger ties to this case than the District of Delaware and litigating this case in the Northern District would be more convenient and less expensive for all involved.

## III. STATEMENT OF FACTS

### A. The Parties Both Have Their Principal Operations in California, and Nearly All Key Party and Non-Party Witnesses Reside in Northern California.

Illumina is among the 50 largest biotech companies in the world, with many product lines spanning cancer research, microbiology, reproductive health, genetic disease and more. Tigan Dec., Exs. 1-2. Although Illumina is a global company, it is headquartered in San Diego, California. D.I. 1 ¶¶ 1, 10. Illumina also maintains U.S. offices in Foster City, California,[1] Madison, Wisconsin, and Baltimore, Maryland, but none in Delaware. Tigan Dec., Ex. 3.

Illumina asserts three patents in this case, U.S. Patent Nos. 10,612,096 (the "'096 Patent"); 12,139,760 (the "'760 Patent"); and 12,435,373 (the "'373 Patent"). D.I. 1, 1. All three relate generally to the field of prenatal screening and diagnosis, '373 Patent, 1:27-41, '096 Patent, 1:41-57, '760 Patent, 1:42-58, through the use of genomic sequencing, '373 Patent, 2:7-11, '096 Patent, 2:40-57, '760 Patent, 2:40-58.

[1] Foster City, California is located in San Mateo County, which is within the Northern District.

These patents were originally assigned to Verinata Health, Inc., a company based out of Redwood City, California (within the Northern District of California), *see* ’096, field (73), which Illumina acquired in 2013. Tigan Dec., Ex. 6. Dr. Rava is the sole inventor of the ’373 patent, ’373 Patent, field (72), and the other two asserted patents name Dr. Rava as the lead inventor, along with five additional co-inventors. ’096 Patent, field (72); ’760 Patent, field (72).

At least five of the six named inventors for the asserted patents reside in California, and at least four of them reside within the Northern District of California:

1. Dr. Rava resides in Redwood City, California. Tigan Dec., Ex. 7.
2. David Comstock resides in San Francisco, California. *Id.*, Ex. 8.
3. Dr. Heilek resides in Mountain View, California. *Id.*, Ex. 9.
4. Dr. Hunkapillar resides in San Carlos, California. *Id.*, Ex. 10.
5. Yuejen Chuu resides in Tracy California, just east of the Northern District. *Id.*, Ex. 11.

And while Manjula Chinnappa appears to reside in Chicago, Illinois, public records indicate that he owns residential property in Redwood City, California. *Id.*, Ex. 12.

During prosecution of the asserted patents, Illumina repeatedly distinguished a prior art paper authored by Christina Fan, Stephen Quake, Yair J. Blumenfeld, Usha Chitkara, and Louanne Hudgins (“Fan 2008”). *See, e.g.*, Tigan Dec., Ex. 13, at 14 (discussing Fan 2008); Ex. 14 (Fan 2008 article). None of these authors reside in Delaware, while at least three, Drs. Fan, Quake, and Blumenfeld, reside in Northern California. *Id.*, Exs. 15-17. None are affiliated with any party, nor, to BillionToOne’s knowledge, would they have reason to appear in court for trial absent a subpoena. BillionToOne intends to challenge Illumina’s characterizations of Fan 2008 during prosecution, hence these authors possess important information for BillionToOne’s defense and may be subpoenaed in the litigation.

BillionToOne went public in late 2025 and has two general product fields, oncology and prenatal screening. Currently, BillionToOne has three office locations, all in the Northern District, with its headquarters in Menlo Park, California. Taylor Dec., ¶¶ 2-3. BillionToOne develops, sells and markets its accused products out of these three California offices. *Id.*, ¶¶ 5, 9, 12.

In its Complaint, Illumina accuses certain BillionToOne UNITY prenatal screening tests of infringing the asserted patents, citing two articles "describing the methods that BillionToOne performs while using its UNITY tests" as the basis of its allegations. D.I. 1, ¶ 31; D.I. 1, Ex. 5. The authors include former BillionToOne employees who are no longer affiliated with the company, including former Co-Founder and Chief Science Officer Sukrit Silas, and former Senior Engineer Amy Nguyen, both of whom to reside in the Northern District of California. Tigan Dec., Exs. 4-5, 25-26.

BillionToOne's leadership also primarily resides within the Northern District of California. Taylor Dec., ¶ 4; Tigan Dec., Exs. 21-23. BillionToOne currently has 890 total employees, 478 of whom reside in California and only two (both in field sales) who reside in Delaware: a Delaware prenatal account manager and a regional prenatal sales manager, neither of whom has non-cumulative information relevant to this case. Taylor Dec., ¶ 7. BillionToOne employs many more prenatal account managers and regional prenatal account managers in California, and far more business is conducted in California than Delaware. *Id.*, at ¶¶ 7-8. Moreover, no employee or former employee involved in any activities relevant to this patent lawsuit, including in the design, development, or manufacture of the accused UNITY tests, resides in Delaware or the surrounding area. *Id.,* at ¶ 11. The majority of BillionToOne's current employees and key former employees involved in the design, development and commercialization of BillionToOne's UNITY tests reside in California. *Id.*, at 10.

**B. The Activities Giving Rise to This Complaint Have Strong Ties to Northern California but Have No Distinct Ties to Delaware.**

The accused UNITY tests were primarily designed, developed and commercialized in Northern California. Taylor Dec., ¶ 9. The relevant records and documents are located in Northern California. *Id.*, ¶ 12. In the Complaint, the only infringement allegations related to Delaware are in paragraph 32, in which Illumina alleges that "On information and belief, BillionToOne has used its UNITY tests for U.S. customers and patients, including those in the District of Delaware. Upon information and belief, BillionToOne also has used, marketed, advertised, promoted, and/or supported, and continues to use, market, advertise, promote, and/or support the accused UNITY tests in the United States." D.I. 1, ¶ 32. But BillionToOne's California sales activities dwarf its sales activities in Delaware. *See* Taylor Dec., ¶¶ 7-8. For example, BillionToOne has over 650 California-based UNITY clients, while it has less than 15 UNITY clients in Delaware. *Id.*, ¶ 8. Further, as of late July 2026, California clients have paid over $80M for UNITY tests, while Delaware UNITY clients have paid approximately $2.5M. *Id.*, ¶ 8. The alleged infringement is not specific to Delaware and is much more closely tied to California.

**C. Illumina Has Previously Filed Multiple Lawsuits on Similar Subject Matter in the Northern District of California.**

Illumina has frequently chosen to initiate patent litigation in the Northern District of California. These lawsuits involved similar patents on prenatal testing and genetic sequencing. For example, in 2018, Illumina filed a lawsuit in the Northern District of California against Natera Inc. alleging infringement of patents related to "Methods of fetal abnormality detection." *Illumina, Inc. v. Natera, Inc.*, No. 18-CV-01662-SI, 2019 WL 377743, at *1 (N.D. Cal. Jan. 30, 2019). Illumina and Verinata similarly litigated patent claims in the Northern District against another prenatal testing company from 2012 through 2018. *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.,* 329 F. Supp. 3d 1070, 1083–84 (N.D. Cal. 2018). And Illumina litigated a patent infringement action

on genetic sequencing in the Northern District from 2019 through 2022. *See Illumina, Inc. v. BGI Genomics Co.*, No. 19-CV-03770-WHO, 2022 WL 899421, at *1 (N.D. Cal. Mar. 27, 2022). Illumina itself clearly regards the Northern District of California as a convenient forum.

## IV. ARGUMENT

### A. Legal Standards

The Court is authorized to "transfer any civil action to any other district or division where it might have been brought" when a transfer would serve "the interest of justice" and the "convenience of parties and witnesses." 28 U.S.C. § 1404(a). Section 1404(a) "vest[s] district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)) (mandamus issued ordering court in the Eastern District of Pennsylvania to transfer case to the Middle District of Pennsylvania).

In evaluating a motion to transfer, the Court must first determine whether the case could have been brought in the district to which the movant wishes to transfer. *Valnet Inc. v. Wrap News Inc.*, No. 25-507-JLH, 2025 WL 3770176, at *1 (D. Del. Dec. 31, 2025) (transferring case from District of Delaware to Central District of California). If so, the Court should then "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Illumina, Inc. v. Complete Genomics, Inc.*, No. 10-649-RK, 2010 WL 4818083, at *2 (D. Del. Nov. 9, 2010) (transferring case from District of Delaware to Northern District of California).

To do so, Delaware courts turn to the private and public factors set forth in *Jumara*. "The private interests include: (1) plaintiff's forum preference; (2) defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of

witnesses to the extent that they may be unavailable for trial in one of the fora; and (6) the location of sources of proof such as books and records to the extent that the records could not be produced in the alternative forum." *Mekiki Co. v. Facebook, Inc.*, No. 09-745 (JAP), 2010 WL 2348740, at *3 (D. Del. June 7, 2010). The public interests are: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local disputes at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.*

The factors should be balanced without weighing too heavily the plaintiff's choice of forum and the defendant's place of incorporation alone. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011) (mandamus issued ordering court in District of Delaware to transfer case to Northern District of California) ("In this case, the district court failed to balance those factors fairly and instead elevated two considerations to overriding importance. With respect to private interests, the district court's fundamental error was making Marvell's choice of forum and the fact of LAMD's incorporation in Delaware effectively dispositive of the transfer inquiry."). While "ordinarily a court will give 'paramount consideration' to a plaintiff's choice of forum . . . . under § 1404(a), absent a legitimate, rational reason, if the plaintiff chooses to litigate away from his or her "home turf," the defendant's burden is lessened." *Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321, 329 (D. Del. 2009). "Under § 1404(a) "home turf" refers to a corporation's principal place of business." *Id.* "The convenience of the parties and witnesses, and the location of relevant evidence, are the most important factors in the § 1404(a) analysis." *Illumina,* 2010 WL 4818083, at *3. "It is unreasonable to subject all parties to an inconvenient forum when a forum exists that would significantly reduce the burden of at least

one of the parties." *Pacira Biosciences, Inc. v. Ventis Pharma, Inc.*, No. 23-1250-RGA, 2024 WL 3925117, at *3 (D. Del. Aug. 23, 2024).

For the reasons below, the relevant private and public factors all heavily favor transfer to the Northern District of California.

### B. The Case Could Have Been Brought in The Northern District.

This case clearly could have been brought in the Northern District of California, where BillionToOne has its principal place of business and developed the accused products. *Mekiki Co.*, 2010 WL 2348740, at *2 (transferring case from District of Delaware to Northern District of California, where defendant was headquartered and developed accused product).

### C. The Private Interest Factors Strongly Favor Transfer.

This matter undeniably has a far stronger connection to California, where both parties run their business operations and where key non-party witnesses reside. The vast majority of BillionToOne's employees, records, and other evidence related to the accused products are in California, where it operates its three and only offices. Although the Complaint alleges that BillionToOne has used its tests for customers and patients in Delaware, D.I. 1, ¶ 32, the same is true of California. The only unique connection Delaware has to this case is that both parties are incorporated here. "Neither § 1404 nor *Jumara* list a party's state of incorporation as a factor for a venue inquiry" and "[i]t is certainly not a dispositive fact in the venue transfer analysis . . . ." *In re Link_A_Media Devices Corp.*, 662 F.3d at 1224. "The fact that the parties and this case have significant ties to California, and the lack of any meaningful contacts with Delaware, weighs in favor of transfer to California." *Illumina,* 2010 WL 4818083, at *3.

#### 1. Illumina's choice of forum should be given little weight.

"When a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference." *In re Link_A_Media Devices Corp.*, 662 F.3d at 1223; *Signal*

*Tech, LLC v. Analog Devices, Inc.*, No. 11-1073-RGA, 2012 WL 1134723, at *2 (D. Del. Apr. 3, 2012) (transferring case from District of Delaware to the District of Massachusetts, and explaining that plaintiff's choice of forum does not weigh "as strongly as it would if the plaintiff had its principal place of business (or, indeed, any place of business) in Delaware."). California, rather than Delaware, is Illumina's "home turf." Further, as noted above, Illumina itself has affirmatively chosen to litigate similar cases in the Northern District of California.

**2. The Defendant's choice of forum is more convenient for everyone.**

BillionToOne would prefer to litigate in the Northern District of California, where its offices are located, where the accused products were developed, and where key witnesses reside. In analyzing the defendant's choice of forum, Courts "tend[] to examine whether the defendant can articulate rational, legitimate reasons to support that preference." *Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 438 (D. Del. 2015) (transferring case from District of Delaware to Northern District of California). "As this Court has often held, the physical proximity of the proposed transferee district to a defendant's principal or key place of business (and relatedly, to witnesses and evidence potentially at issue in the case) is a clear, legitimate basis for seeking transfer." *Id*. This factor thus weighs in favor of transfer.

**3. The claims primarily arose in California, not Delaware.**

The claims arose in California and have far stronger ties to California than to Delaware, weighing heavily in favor of transfer. Although a "claim regarding patent infringement arises wherever someone has committed acts of infringement," courts generally focus "on the location of the production, design and manufacture of the accused instrumentalities" when assessing whether to transfer under Section 1404. *Id.* at 439 (internal quotations omitted). "Also relevant is the place where marketing and sales decisions were made, rather than where the limited sales activity has occurred." *LG Electronics, Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 590

(D.N.J. 2001) (transferring case from District of New Jersey to Northern District of California where "operative facts" of litigation were centered in California). Thus, the Complaint's reference to limited sales activities in Delaware should be given little weight in the transfer analysis.

Here, the accused UNITY prenatal tests were designed, developed and commercialized in Northern California. Taylor Dec., ¶ 9. While some use of the tests occurs in Delaware, this is only after sale, and even then, California generated more than 30 times more sales revenue than Delaware. *Id.*, ¶¶ 7-8. Further, relevant marketing decisions are made out of BillionToOne's offices in the Northern District of California. *Id.* Thus, it is clear that the "allegedly infringing acts at issue have a far stronger connection to the Northern District of California than they do with Delaware (or any other district)." *Papst Licensing,* 126 F. Supp. 3d at 439 (finding transfer appropriate where accused products were designed out of offices in Northern California and were only "used to perform the patented methods" after sale in Delaware); *LG Electronics*, 138 F. Supp. 2d at 590 (noting that "[a]ll relevant marketing and sales decisions" were made either abroad or in the transferee venue, which also had a larger volume of sales).

**4. California is far more convenient for both parties.**

The convenience of the parties also strongly favors transfer. When considering this factor, courts examine "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Pacira Biosciences, Inc.*, 2024 WL 3925117, at *3 (transferring case from District of Delaware to the Central District of California, where it was "substantially more convenient" to litigate the case given defendant's California activities).

All three of BillionToOne's offices are in Northern California. Taylor Dec., ¶ 3. This is also where the vast majority of BillionToOne's leadership and relevant employees, including those

involved in the development and design of the accused products, reside. *Id.* ¶¶ 4, 7. *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (mandamus issued transferring case from Eastern District of Texas to Northern District of California where witnesses with "knowledge of the development and/or manufacture of the accused infringing products" resided in California). Only two of BillionToOne's 890 employees (less than 0.23% of its workforce) reside in Delaware, and those employees do not possess noncumulative, relevant information. Taylor Dec., ¶ 7. Transferring the case is "likely to present fewer complications than one across the country" because "[w]itnesses who live within a short distance of the courthouse are likely to be more flexible as to when they are able to attend trial and testify, making the management of the proofs simpler." *MoneyCat Ltd v. PayPal Inc.*, No. 13-1358-MSG, 2014 WL 2042699, at *6 (D. Del. May 15, 2014) (transferring case from District of Delaware to the Northern District of California for convenience of witnesses).

To appear in court in Delaware, BillionToOne's representatives and employees would have to travel nearly 3000 miles across the country. Compelling BillionToOne to litigate this matter in Delaware would add to the costs of the case due to the need to transport employees and materials across the country. Litigating in the Northern District of California would also greatly lessen the travel distance for California-based Illumina, thus transfer would reduce the burden on all parties. *Samsara Inc. v. Motive Techs., Inc.*, No. 24-84 (MN), 2024 WL 3822981, at *5 (D. Del. Aug. 14, 2024) (transferring case from District of Delaware to the Northern District of California where parties were "headquartered in San Francisco, California, minutes from the transferee court," traveling to the District of Delaware, which "sits nearly 3,000 miles away in Wilmington, Delaware . . . . would impose substantial additional costs"); *Illumina,*2010 WL 4818083, at *3 ("[d]ue to the parties' significant contacts with California, and minimal contacts with Delaware,

there is no question that California is a more convenient forum for the parties," which "weighs strongly in favor of transferring this action to California.").

**5. The Northern District is more convenient for key witnesses.**

Key witnesses reside in California and, if the case is not transferred to the Northern District, may be unavailable for trial. Thus, this factor heavily favors transfer. "Traditionally, the location of potential witnesses and, thus, their ability to be subject to compulsory process has weighed heavily in the 'balance of convenience' analysis." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998) (transferring case from District of Delaware to the Northern District of California). "A significant distance between an identified witness and the forum may suggest, in some instances, that the witness will be unwilling to appear freely." *Blackbird Tech LLC v. Cloudflare, Inc.*, No. 17-283-MSG, 2017 WL 4543783, at *10 (D. Del. Oct. 11, 2017) (transferring case from the District of Delaware to the Northern District of California where location of non-party witnesses near transferee forum weighed "substantially in favor of transfer"). This is because "even previously cooperative witnesses may become reluctant participants where a trial in a distant state such as Delaware promises the incurrence of substantial, prolonged inconvenience." *Affymetrix,* 28 F. Supp. 2d at 205 (finding this factor "weigh[ed] strongly in favor of transfer" even where many non-party witnesses had pledged to make themselves available for trial).

None of the named inventors are parties to this case and at least five of the six named inventors of the asserted patents—including Dr. Rava, the sole named inventor of the '373 Patent—are not employed by either party. Although "each party is able and obligated to procure the attendance of its own employees for trial," this is not the case for non-party witnesses that are not employed by a party. *Illumina*, 2010 WL 4818083, at *4. None of the inventors reside in Delaware and all are far beyond this Court's subpoena power. But Dr. Rava and at least four of the other named inventors reside in California and are within the subpoena powers of the Northern

District of California. *Illumina*, 2010 WL 4818083, at *4, FN 4 (explaining that the "Northern District of California's subpoena power extends throughout the state of California pursuant to Rule 45 of the Federal Rules of Civil Procedure" and "Section 1989 of the California Code of Civil Procedure" which "authorizes state-wide service"). Courts have frequently granted motions to transfer when the non-party named inventors will be subject to the subpoena power of the proposed transferee court. *See e.g. Teleconference*, 676 F. Supp. 2d at 333 (transferring case from the District of Delaware to the Northern District of California where four witnesses, including two of the patent's inventors, resided in California and could not be compelled to testify at trial in Delaware); *Affymetrix,* 28 F. Supp. 2d at 204-05 (finding it "desirable to hold trial at a place where the personal attendance of witnesses through the use of subpoena power can be reasonably assured" and determining that "the interests of [the named inventors of the patents-in-suit] . . . weigh strongly in favor of transfer"); *Illumina*, 2010 WL 4818083, at *4 (transferring the case where the sole inventor of the patents-in-suit was a "central witness to this case who, due to his residency in California, [wa]s within the subpoena power" of the Northern District of California, but outside the subpoena power of the District of Delaware); *Wenzhou Xin Xin Sanitary Ware Co. v. Delta Faucet Co.*, No. CV 23-2038-ES-AME, 2023 WL 6158942, at *5 (D.N.J. Sept. 21, 2023) (transferring case from District of New Jersey to the Southern District of Indiana where "five of the eight inventors of the '277 Patent are no longer employed by Defendant," but at least four non-party witnesses, who would be beyond the court's subpoena power in New Jersey, would be subject to the Southern District of Indiana's subpoena power) (internal citations omitted).

Additionally, former BillionToOne employees who worked on the accused product reside in the Northern District of California. *Blackbird Tech*, 2017 WL 4543783, at *10 (finding that the presence of former employee witnesses in the transferee venue weighed in favor of transfer).

Among these are Sukrit Silas and Amy Nguyen, authors of the paper which Illumina cites in its Complaint as evidence of alleged infringement. D.I. 1, ¶ 31; D.I. 1, Ex. 5. These former employees likely have "relevant information regarding the functionality" of the accused product but are outside this Court's subpoena power. *Blackbird Tech*, 2017 WL 4543783, at *10; *In re Genentech*, 566 F.3d at 1343 (granting transfer where "two former employees with relevant information regarding the functionality of the accused servers [were] outside this Court's subpoena power and would not willingly travel to Delaware for this case"). Additionally, as litigation proceeds, additional developers of the accused product may leave BillionToOne's employ, although most would likely continue to reside within California. *See Signal Tech,* 2012 WL 1134723, at *3 (finding it relevant that "[e]x-employees (and, with the passage of time from now until trial, it is possible, if not probable, that some employees will become ex-employees) would not be subject to this Court's subpoena power, but would stand a much better chance of continuing to be subject to the subpoena power in the District of Massachusetts"). Transferring the case would make it more likely that these former employees could be compelled to testify live at trial, if needed.

Further, prior art witnesses, including Christina Fan, Yair Blumenfield, and Stephen Quake, similarly reside in California, outside the subpoena power of this district. *Blackbird Tech*, 2017 WL 4543783, at *9 ("[a]s prior art will likely be an issue at trial and as the prior art inventors may have relevant and material information, the location of potential prior art witnesses must be a consideration in the venue transfer analysis."). These witnesses are likely to have relevant knowledge regarding their publication, Fan 2008, which Illumina repeatedly attempted to distinguish during the prosecution of the asserted patents. The correct characterization of this reference is important to BillionToOne's defense, and these authors are the individuals most likely to possess this relevant knowledge and may need to testify. *See id.*. These witnesses have no

connection to the parties in this action and thus could not reasonably be expected to voluntarily present themselves at trial on the other side of the country when not compelled to do so by subpoena. *See Affymetrix,* 28 F. Supp. 2d at 204 (location of third-party witnesses who possessed "a tremendous amount of knowledge about the prior art" weighed "heavily in favor of transfer").

If the case is transferred, these non-party witnesses would be subject to the Northern District of California's subpoena power, while the Delaware Court has no such power to compel their attendance. *See id.* The "convenience and availability" of these key witnesses is a "significant factor that weighs strongly in favor of transfer of this case to the Northern District of California." *Illumina*, 2010 WL 4818083, at *4 (finding this factor strongly favored transfer where the sole inventor of the patents-in-suit lived in California and thus might be unavailable to testify in Delaware*); Rebak v. United Airlines, Inc.*, No. 23-537-JLH, 2025 WL 388704, at *1 (D. Del. Feb. 4, 2025) (transferring case from District of Delaware to the District of New Jersey where "multiple relevant witnesses not employed by Defendant" resided); *In re 3M Co.*, No. 20-2864, 2020 WL 13924735, at *2 (3d Cir. Nov. 18, 2020) (finding transfer appropriate on mandamus where a nonparty witness was located in the transferee venue, but "outside the subpoena power of the [original] District").

**6. The relevant evidence is located in California.**

Virtually all relevant evidence is located in California, where the accused products were designed, developed and commercialized and where BillionToOne maintains its offices. Thus, this factor also favors transfer. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d at 1345. "If most of the evidence resides in the proposed transferee forum and none resides in the transferor forum, it

is error to not weigh this factor heavily in favor of transfer." *Blackbird Tech*, 2017 WL 4543783, at *10.

Because the relevant documents and other evidence related to the design, development, and commercialization of the accused products are located at BillionToOne's California offices, litigating in the Northern District of California would be more efficient. *MoneyCat Ltd.*, 2014 WL 2042699, at *6 ("PayPal is likely to be the party producing the bulk of documents and records in this case, and [because] it would be more convenient for it to litigate this case near its headquarters than on the East Coast[, e]fficiency favors transferring a case to the location where the vast majority of relevant records are to be found."); *Blackbird Tech*, 2017 WL 4543783 at *6 ("As this evidence is sufficient to establish that most, if not all, of the development of the infringing method occurred in California, and none of it took place in Delaware, this factor advocates in favor of transfer.").

**D. The Public Interest Factors Also Strongly Favor Transfer**

Public interest factors (2) (practical considerations that could make the trial easy, expeditious, or inexpensive) and (4) (local interest in deciding local disputes at home), like the private factors, weigh in favor of transfer to the Northern District of California. The remaining public interest factors are not applicable to or neutral in this case because it is a patent case arising under federal law. *Samsara*, 2024 WL 3822981, at *7 (finding factors (1) (enforceability of judgment), (5) (public policies of the fora) and (6) (court's familiarity with the applicable state law in diversity cases) neutral or not applicable). Factor (3) (administrative difficulty due to court congestion) is also neutral because the courts are similarly congested.[2]

---

[2] In the District of Delaware, the weighted filings are 657 with a median time from filing to trial of 43 months. Tigan Dec., Ex. 24, p. 14. The Northern District of California has a weighted filing of 725 with a median time from filing to trial of 38.9 months. *Id.* at p. 66.

**1. Practical considerations favor transfer.**

The "practical considerations" factor (2) includes "considerations that could make the trial easier, quicker, or less expensive." *Illumina*, 2010 WL 4818083, at *6. As discussed above, transfer to the Northern District of California would be more convenient and less expensive for both parties. Additionally, with all the parties and the relevant evidence located in Northern California, a Northern District of California court would have much easier and more efficient access to records, materials, and individuals relevant to the case. This is especially notable here, where there are multiple key non-party witnesses, including the named inventors of the asserted patents and key prior art witnesses, who reside in Northern California, outside of the subpoena power of this Court. *See id.* (noting that the transferee court had "subpoena power that it can exercise over a number of important witnesses in this case; as opposed to Delaware which is lacking subpoena power over such witnesses").

**2. The local interest factor favors transfer.**

The "local interest" factor (4) also weighs in favor of transfer. "[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *Papst Licensing,* 126 F. Supp. 3d at 445. Here, as discussed above, California has a far more significant connection to Illumina's claims than Delaware.

## V. CONCLUSION

The parties in this case are both based in California. The alleged inventions claimed in the asserted patents were developed in the Northern District of California. The accused products were also designed, developed and commercialized in the Northern District of California. Numerous key non-party witnesses, including the inventors of the asserted patents, developers of the accused products, and prior art witnesses, have no ties to Delaware. These witnesses all either reside in or are closely tied to California and are subject to the Northern District of California's (but not this

Court's) subpoena powers. "[T]here is simply no rational argument that, in light of the witnesses, parties, evidence, compulsory attendance and local interest, the clearly more convenient venue is not the Northern District of California." *In re Genentech*, 566 F.3d at 1348. Clearly, California is the center of gravity in this case. Accordingly, for these and the reasons set forth above, BillionToOne respectfully requests that the Court transfer this suit to the United States District Court for the Northern District of California.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jtigan@morrisnichols.com

*Attorneys for Defendant BillionToOne, Inc.*

OF COUNSEL:

Alan J. Heinrich
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

August 7, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 7, 2026, upon the following in the manner indicated:

Daniel M. Silver
Alexandra M. Joyce
MCCARTER & ENGLISH, LLC
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
*Attorneys for Plaintiff Illumina, Inc.*

*VIA ELECTRONIC MAIL*

Edward R. Reines
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
(650) 739-3982
*Attorneys for Plaintiff Illumina, Inc.*

*VIA ELECTRONIC MAIL*

Derek C. Walter
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
(415) 875-5791
*Attorneys for Plaintiff Illumina, Inc.*

*VIA ELECTRONIC MAIL*

Jeffrey S. Messing
JONES DAY
110 N Wacker, Suite 4800
Chicago, IL 60606
(312) 269-1542
*Attorneys for Plaintiff Illumina, Inc.*

*VIA ELECTRONIC MAIL*

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)